```
Approved: _____
          T. Josiah Pertz
          Assistant United States Attorney

Before:   THE HONORABLE PAUL E. DAVISON
          United States Magistrate Judge
          Southern District of New York          21-MJ-01001
```

------------------------------------X
                                    :
UNITED STATES OF AMERICA            :  SEALED COMPLAINT
                                    :
          -v-                       :  Violations of 18 U.S.C.
                                    :  §§ 371, 2314, and 2
ARTHUR REYNOLDS, and                :
DION JOYCE,                         :  COUNTIES OF OFFENSE:
                                    :  PUTNAM, ROCKLAND,
          Defendants.               :  DUTCHESS, and
                                    X  WESTCHESTER
------------------------------------

SOUTHERN DISTRICT OF NEW YORK, ss.:

       STEVEN BERRY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Transport Stolen Goods Interstate)

       1.  From at least in or about February 2019, up to and including on or about January 8, 2020, in the Southern District of New York and elsewhere, ARTHUR REYNOLDS and DION JOYCE, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the laws of the United States.

       2.  It was a part and an object of the conspiracy that ARTHUR REYNOLDS and DION JOYCE, the defendants, and others known and unknown, would and did transport, transmit and transfer in interstate commerce goods and merchandise and money of the value of $5,000 and more, knowing the same to have been stolen, in violation of 18 U.S.C. § 2314.

**Overt Acts**

3. In furtherance of the conspiracy and to effect the illegal objects thereof, the defendants committed the following overt acts, among others:

    a. On or about December 16, 2019, ARTHUR REYNOLDS, the defendant, burglarized a business in Hartsdale, New York, and obtained cash in excess of $22,000, which REYNOLDS and others known and unknown, thereafter transported to New Jersey.

    b. On or about October 27, 2019, ARTHUR REYNOLDS and DION JOYCE, the defendants, both residents of New Jersey, burglarized three businesses in Long Island, New York, obtaining cash in excess of $20,000, which they transported back to New Jersey, through the Southern District of New York.

(Title 18, United States Code, Section 371.)

**COUNT TWO**
**(Interstate Transportation of Stolen Property)**

4. On or about December 16, 2019, ARTHUR REYNOLDS, the defendant, transported, transmitted and transferred in interstate commerce goods and merchandise and money of the value of $5,000 and more, knowing the same to have been stolen, and did aid and abet the same, to wit, REYNOLDS burglarized a business in Hartsdale, New York and obtained over $22,000, which he thereafter transported to New Jersey.

(Title 18, United States Code, Sections 2314 and 2.)

**COUNT THREE**
**(Interstate Transportation of Stolen Property)**

5. On or about the evening of October 27, 2019 and the early morning of October 28, 2019, DION JOYCE, the defendant, transported, transmitted and transferred in interstate commerce goods and merchandise and money of the value of $5,000 and more, knowing the same to have been stolen, and did aid and abet the same, to wit, JOYCE burglarized a business in Old Bethpage, New York, a business in Great Neck, New York, and a business in Jericho, New York, obtaining a total of over $20,000, which he thereafter transported to New Jersey.

(Title 18, United States Code, Sections 2314 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6. I have been personally involved in the investigation of this matter, and I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

## Background

7. In or about October 2019, the FBI became involved in investigating a group of individuals engaged in serial burglaries of coffee shops and donut stores – primarily one chain (the "Chain Donut Company") – in New York State, who thereafter transported the stolen money to New Jersey, where they resided. I have been the case agent on this investigation since the FBI's involvement.

8. As described below, on or about December 1, 2019, ARTHUR REYNOLDS and DION JOYCE, the defendants, were arrested in the act of burglarizing a bagel shop in Voorhees Township, New Jersey (the "December 1, 2019 Burglary"). At the time of their arrest, REYNOLDS and JOYCE were wearing black hoodies, gloves and face coverings, and REYNOLDS had a distinctive bright green backpack with burglary tools, while JOYCE had a black backpack and a piece of paper listing business addresses, including numerous shopping centers with Chain Donut Company stores, at least one of which, as described below, was later burglarized.

9. During the course of the investigation, law enforcement identified numerous businesses, primarily Chain Donut Company shops, in New York State that were burglarized in a similar manner by two individuals wearing similar clothing, including in several instances the same type of bright green backpack. Based on my comparison of the surveillance videos from other burglaries with the surveillance video from the December 1, 2019 Burglary where ARTHUR REYNOLDS and DION JOYCE, the defendants, were arrested, and based on the physical build and distinctive gait of each defendant, I have been able to identify REYNOLDS and JOYCE as the individuals engaged in these

additional burglaries.  In addition, location data from JOYCE's cellphone places him in the vicinity of the burglarized businesses – including inside the buildings – around the time of the burglaries.

10.  Law enforcement further identified cars associated with the burglaries that were either rented in CC-1's name, or registered to CC-2 or CC-3, all of whom, as described below, are related to or closely associated with ARTHUR REYNOLDS, the defendant.  In particular, as described below, on or about January 9, 2020, REYNOLDS drove with CC-1 in a car that CC-1 rented, and that had been seen in the vicinity of several stores that had been burglarized in the prior week.  When law enforcement searched the car they found a backpack similar to that seen in connection with several of the burglaries, burglary tools similar to those found in REYNOLDS'S backpack during the December 1, 2019 Burglary, United States currency with distinctive markings that were traced to one of the burglarized businesses, and evidence from the infotainment center that passengers had searched for addresses near where several of the burglarized businesses were located, just prior to when the businesses were burglarized.

11.  Law enforcement also obtained license plate reader information and cell site location information, which show that for several burglaries, cars associated with these burglaries traveled from New Jersey to New York State and back again, and/or that phones used by CC-2 and CC-3 traveled similarly and were in the vicinity of the burglarized businesses around the time of the burglaries.

12.  Based on the foregoing and other evidence, as set forth below, there is probable cause to believe that ARTHUR REYNOLDS and DION JOYCE, the defendants, used cars rented by CC-1 or registered to CC-2 or CC-3, to travel from New Jersey to New York State, then burglarized primarily Chain Donut Company stores and stole money, which REYNOLDS and JOYCE thereafter transported back to New Jersey, in each instance transporting the stolen property from or through the Southern District of New York.

### REYNOLDS, JOYCE and the Co-Conspirators

13.  **REYNOLDS:**  Based on my conversation with a United States Probation Officer (the "Probation Officer") in charge of supervising ARTHUR REYNOLDS, the defendant, who is on federal probation for a prior offense, I know that REYNOLDS told the

4

Probation Officer that he was living in Atlantic City, New Jersey throughout 2019, and was using a phone with a call number ending in 5253 ("REYNOLDS'S Phone"), which the Probation Officer used to communicate with REYNOLDS. Based on information obtained from Sprint Corp., I know that REYNOLDS'S Phone is subscribed to Arthur Reynolds, with an address in Camden, New Jersey.

14. **JOYCE**:  Based on my review of a police report prepared by the Voorhees Township Police Department, I know that on or about December 1, 2019, DION JOYCE, the defendant, told law enforcement that he lived in Atlantic City, New Jersey. Based on information obtained from T-Mobile, I know that the phone number with a call number ending in 2849 ("JOYCE'S Phone Number") is subscribed to in the name of Dion Joyce, with an address in Atlantic City, New Jersey. Based on my review of documents from Google, I know that JOYCE'S Phone Number is the user phone number for a certain Google account ("JOYCE'S Google Account"), which is registered in the name of Dion Joyce. Between in or about October 2019 and January 2020, JOYCE'S Google Account was accessed by a single cellphone handset ("JOYCE'S cellphone").

15. **CC-1**:  On or about January 9, 2020, CC-1 told the Probation Officer, in sum and substance, that CC-1 was related to ARTHUR REYNOLDS, the defendant. Based on my review of REYNOLDS'S jail calls, I know that from on or about January 21, 2020 to on or about June 22, 2020, REYNOLDS called a phone number subscribed to CC-1 approximately 56 times. As described herein, CC-1 is believed to have rented several cars that were used in connection with the burglaries.

16. **CC-2:**  Based on an Accurint report and my interview of CC-2, I know that from at least in or about 2019 to in or about 2020, CC-2 lived in Westwood, New Jersey, worked in Newark, New Jersey, and used a phone with a call number ending in 5667 ("CC-2's Phone").

a. Based on an Accurint report for CC-2 and a CLEAR report for ARTHUR REYNOLDS, the defendant, I know that CC-2 and REYNOLDS have resided at the same location at various times, including, when REYNOLDS was not incarcerated, from at least in or about 2006 to 2015.

b. Based on information obtained from Sprint Corp., I know that from on or about October 1, 2019 to on or

about January 8, 2020, Reynolds's Phone had approximately 17 calls with CC-2's Phone.

    c.    As described herein, based on the identification of a car registered to CC-2, a police stop involving CC-2, and cell site data for CC-2's Phone, CC-2 is believed to have driven REYNOLDS and others known and unknown from New Jersey to New York State, where REYNOLDS burglarized businesses, and thereafter drove REYNOLDS back to New Jersey.

    17.    **CC-3:**  Based on information from T-Mobile, I know that CC-3 is the subscriber of a cellphone with a call number ending in 1828 ("CC-3's Phone-1") and a cellphone with a call number ending in 6040 ("CC-3's Phone-2"), and with a listed address in New Jersey. Based on my conversation with an FBI task force officer, I know that in or about October 2020, the FBI task force officer called CC-3's Phone-1 and spoke with an individual who identified himself/herself as CC-3.

    a.    Based on information obtained from Sprint Corp., I know that from on or about October 1, 2019 to on or about January 8, 2020, Reynolds's Phone had approximately 180 calls with CC-3's Phone-1 and 10 calls with CC-3's Phone-2.

    b.    As described herein, based on the identification of a car registered to CC-3 and cell site data for CC-3's Phone-1 and Phone-2, CC-3 is believed to have driven REYNOLDS and others known and unknown from New Jersey to New York State, where REYNOLDS burglarized businesses, and thereafter drove REYNOLDS back to New Jersey.

**A. February 6, 2019 Burglaries**

    18.    Based on my conversation with a police officer from the New York State Police ("NYSP") and my review of a police report prepared by the NYSP I know that on or about February 6, 2019, an employee of a Chain Donut Company store located in the Town of Southeast, New York ("Store-1") told law enforcement that the store had been burglarized overnight and someone had stolen approximately $2,200.[1]

---

[1] Both the manager and owner of Store-1 reviewed the surveillance footage from Store-1 and provided law enforcement with the names of two individuals that they believed resembled the individuals in the footage and neither of those individuals are the defendant.

6

19.     Based on my review of surveillance footage from Store-1, I know that:

    a.      On or about February 6, 2019 at 1:40 a.m., two individuals wearing dark-colored clothing, including gloves and a ski mask, entered Store-1 from the back door.

    b.      One of the individuals, a dark-skinned, heavy-set male, was carrying a backpack and used a pry bar to open Store-1's office door and removed what appeared to be cash from a drawer.  Meanwhile, the thinner individual went to Store-1's cash registers.

    c.      Based on my review of the surveillance footage from Store-1 and the December 1, 2019 Burglary, I believe that based on his physique and distinctive gait, the heavy-set male is ARTHUR REYNOLDS, the defendant.

20.     Based on my review of a report prepared by the Carmel Police Department and a report prepared by the Kent Police Department, I know that on or about February 6, 2019, two other Chain Donut Company stores within approximately five miles of Store-1 were burglarized at or about 12:56 a.m. and 2:58 a.m., in a similar manner by two individuals wearing similar clothing to the individuals who burglarized Store-1. Altogether, approximately $1,350 was stolen from these two other Chain Donut Company stores.

21.     Based on cell site location data received from Sprint Corp., I know that Reynolds's Phone was in the vicinity of the stores described above around the time of the burglaries, and was thereafter in the vicinity of Sawmill Parkway in Yonkers, near the border of New Jersey, at or about 5:01 a.m. on February 6, 2019, and Key Port, New Jersey at or about 5:26 p.m. on February 6, 2019.

22.     Based on information from Enterprise Rent-A-Car ("Enterprise"), I know that on or about January 23, 2019, CC-1 rented a grey Nissan Rogue, with license plate ending in 7086 (the "Nissan Rogue"), which was not returned to Enterprise until on or about February 8, 2019.  Based on my review of a report prepared by the Kent Police Department, I know that surveillance footage from the vicinity of the stores burglarized on or about February 6, 2019, showed a dark-colored car of a similar type to the Nissan Rogue, in the area around the time of one of the burglaries.

**B. October 21, 2019 Burglary**

23.     Based on my conversation with a police officer from the Kent Police Department, and my review of a police report prepared by the Kent Police Department, I know that on or about October 21, 2019, an employee of a Chain Donut Company store located in Carmel, New York ("Store-2") told law enforcement, in sum and substance, that when he/she opened Store-2 that day, he/she noticed the cash register drawers were on the floor and approximately $850 had been stolen.

24.     Based on my review of surveillance footage from Store-2, I know that:

a.      At or about 3:10 a.m. on October 21, 2019, two individuals were seen outside Store-2 wearing dark-colored pants and hoodies, and carrying two backpacks, one of which resembled the bright green backpack ARTHUR REYNOLDS, the defendant, wore during the December 1, 2019 Burglary, and the other backpack had red drawstrings. The two individuals went to Store-2's front door and used what appeared to be a vise grip to pop out the door's lock.

b.      Once inside, the two individuals used a pry bar to unlock the office door. The individuals then opened drawers inside the office and removed a bag and cash from the cash register drawers.

c.      Based on my review of the surveillance footage from Store-2 and the December 1, 2019 Burglary, I believe that based on his physique and distinctive gait, one of the individuals in the video is REYNOLDS.

25.     Based on my review of surveillance from the vicinity of Store-2 and records from the Department of Motor Vehicles, I know that a vehicle that appeared similar to the make and model of a car registered to CC-2 ("CC-2's Car"), was in the vicinity of Store-2 around the time that Store-2 was burglarized.

26.     Based on my review of a supplemental report prepared by the Kent Police Department, I know that on or about October 21, 2019, law enforcement pulled CC-2's Car over at approximately 5:20 a.m. in Poughkeepsie, New York, approximately 20 miles from Store-2. The driver of the vehicle was identified as CC-2, and the officer observed two other African-American males in CC-2's Car.

27. Based on my review of license plate reader reports, I know that CC-2's Car was identified in New York, New York at or about 12:09 a.m. on October 21, 2019 and was thereafter identified crossing the George Washington Bridge, heading into New Jersey at or about 8:16 a.m. on October 21, 2019.

28. Based on my review of geographic location information and subscriber information from Google, I have learned that on or about October 21, 2019, Joyce's cellphone was in the vicinity of Store-2 in Carmel, New York between approximately 3:09 a.m. and 3:23 a.m., including, for some time during that period, inside the physical premises of Store-2.  I have also learned that the phone crossed from New York State to New Jersey between the hours of approximately 8:17 a.m. to 8:19 a.m.

**C. October 27 to October 28, 2019 Burglaries**

29. Based on my conversation with a police officer from the Nassau County Police Department and my review of a Nassau County Police Department report, I know that on or about October 28, 2019, the owner of a Chain Donut Company store located in Old Bethpage, New York ("Store-3") told law enforcement that it appeared someone had pried open the cash register drawers and stolen approximately $400, taken approximately $700 from a drawer in the store's office, and attempted to saw into the store's safe.

30. Based on my review of surveillance footage from Store-3, I know that:

a. At or about 1:20 a.m. on October 28, 2019, two individuals were walking outside the back of Store-3.  The heavy-set individual was wearing all black clothing, including a hoodie, pants, and a ski mask, and carrying a bright green backpack, which resembled the backpack from Store-2 and the December 1, 2019 Burglary.  The thinner individual was wearing a blue hoodie and dark-colored face mask and carrying a red draw-string backpack, which resembled the other backpack from the burglary of Store-2.

b. Based on my review of the surveillance footage from Store-3 and the December 1, 2019 Burglary, I

9

believe that based on his physique and distinctive gait, the heavy-set male is ARTHUR REYNOLDS, the defendant.

      c. Based on my review of the surveillance footage from Store-3, my review of the surveillance footage from the December 1, 2019 Burglary, and my review of the photograph from the rap sheet of DION JOYCE, the defendant, I believe that based on his physique and gait, the thinner individual is JOYCE.

    31. Based on my conversation with a police officer from the Nassau County Police Department and my review of two other police reports prepared by the Nassau County Police Department and surveillance footage from a Chain Donut Company store located in Great Neck, New York ("Store-4") and a bagel store in Jericho, New York ("Store-5"), I know that at or about 12:01 a.m. and 4:13 a.m. on October 28, 2019, two individuals wearing similar clothing and with similar physical builds to the individuals observed in the surveillance footage for Store-3 broke into Store-4 and Store-5, and stole money from the stores' cash registers and offices. Overall, approximately $20,000 was stolen from Store-4 and Store-5.

    32. Based on my review of surveillance from the vicinity of Store-3, I know that a blue Nissan Sentra was seen driving in the vicinity around the time that Store-3 was burglarized.

    33. Based on information from Enterprise, I know that on or about October 23, 2019, CC-1 rented a blue Nissan Sentra, with license plate ending in 1532 (the "Blue Nissan Sentra") which was not returned to Enterprise until on or about October 31, 2019.

    34. Based on my review of license plate reader reports, I know that at or about 11:00 p.m. on October 27, 2019, the Blue Nissan Sentra traveled on the George Washington Bridge, heading from New Jersey into New York City, and at or about 5:14 a.m. the Blue Nissan Sentra was on the Verrazzano-Narrows Bridge, driving towards New Jersey.

    35. Based on my review of geographic location information and subscriber information from Google, I have learned the following, in substance and in part:

      a. On or about October 28, 2019, Joyce's cellphone was in the vicinity of Store-3 between approximately 1:07 a.m.

and 1:44 a.m., including, for some time during that period, inside the physical premises of Store-3.

      b.   On or about October 28, 2019, Joyce's cellphone was in the vicinity of Store-4 between approximately 4:01 a.m. and 4:17 a.m., including, for some time during that period, inside the physical premises of Store-4.

      c.   Joyce's cellphone was in the vicinity of Store-5 between approximately 11:55 p.m. on or about October 27, 2019, and approximately 12:47 a.m. on or about October 28, 2019, including, for some time during that period, inside the physical premises of Store-5.

      d.   On or about October 28, 2019, Joyce's cellphone crossed from New York State to New Jersey between the hours of approximately 5:22 a.m. and 5:25 a.m.

**D. The December 1, 2019 Arrest of REYNOLDS and JOYCE for Burglary in New Jersey[2]**

      36.   I have spoken with a detective from the Voorhees New Jersey Township Police Department, and reviewed a police report prepared by an officer from the Voorhees Township Police Department and surveillance footage from a bagel store located in Voorhees Township, New Jersey (the "Voorhees Bagel Store"). From these sources, I know the following:

      a.   At or about 10:44 p.m. on December 1, 2019, the owner of the Voorhees Bagel Store notified law enforcement that he/she was reviewing surveillance from the Voorhees Bagel Store and saw that two masked men were currently inside the store.

      b.   Based on my subsequent review of the surveillance footage from the Voorhees Bagel Store, I know that at or about 10:40 p.m. on December 1, 2019, two individuals wearing backpacks and black clothing, including hoodies, gloves and face coverings were inside the Voorhees Bagel Store. The thinner individual, later identified as DION JOYCE, the defendant, opened the cash registers and took the money inside. Meanwhile, the heavy-set individual, later identified as ARTHUR

---

[2] This burglary, which occurred in New Jersey, is described herein to provide relevant information to identify ARTHUR REYNOLDS and DION JOYCE, the defendants, as participants in the burglaries that are described above.

11

REYNOLDS, the defendant, went to the back office, used a pry bar to open a safe and removed its contents, which included what appeared to be United States currency.

        c. Law enforcement arrived at the Voorhees Bagel Store and ordered the individuals inside to come out and surrender. The heavy-set individual, who later identified himself as ARTHUR REYNOLDS immediately walked outside and surrendered, followed later by the other individual, who identified himself as JOYCE.

        d. At the time of his arrest, REYNOLDS was carrying a bright green backpack which contained numerous power tools, including a reciprocating saw, angle grinder, extension cord, crow bars, and replacement blades. Inside JOYCE's pockets was a piece of paper containing a list of six business addresses, many of which were strip malls with Chain Donut Company stores, at least one of which, as described below, was later burglarized. In total, approximately $2,322 was recovered from REYNOLDS and JOYCE.

### E. December 16, 2019 Burglary

    37. I have spoken with a police officer from the Greenburgh Police Department, and reviewed a police report prepared by an officer from the Greenburgh Police Department and surveillance footage from a Chain Donut Company store located in Hartsdale, New York ("Store-6"). From these sources, I know the following:

        a. At or about 2:30 a.m. on December 16, 2019, two individuals broke into Store-6. The individuals were wearing dark clothing, with the thinner individual also carrying a black backpack with a red or orange top.

        b. The heavy-set individual used what appeared to be a vice grip to open Store-6's door, then used what appeared to be a corded reciprocating saw to cut open the store's ATM and removed an object from inside. Meanwhile, the thinner individual removed money from a black shelf and small safe. In total, over $22,000 was stolen.

    38. Based on my review of the surveillance footage from Store-6 and the December 1, 2019 Burglary, I believe that based on his physique and distinctive gait, the heavy-set male is REYNOLDS.

39. Based on my review of surveillance footage from the vicinity of Store-6 and Department of Motor Vehicle Records, I know that a vehicle resembling the color, make and model of a car registered to CC-3, was in the vicinity of Store-6 around the time that Store-6 was burglarized.

40. Based on my review of license plate reader records, I know that CC-3's Car traveled from New Jersey to New York State via the George Washington Bridge on or about December 15, 2019 at 10:42 p.m.; was within one to three miles of Store-6 around the time that Store-6 was burglarized, and thereafter traveled on the George Washington Bridge from New York State into New Jersey on or about December 16, 2019 at 3:42 a.m.

41. Based on information provided by an agent from the FBI's Cellular Analysis Survey Team ("CAST"), I know that from on or about December 15, 2019 to on or about December 16, 2019, both CC-2's Phone and CC-3's Phone-1 traveled from the vicinity of Newark, New Jersey to New York State, were in the vicinity of Store-6 around the time of the above-described burglary at Store-6, and thereafter traveled to the vicinity of Jersey City, New Jersey.

**F. January 3, 2020 Burglaries**

42. I have spoken with a police officer from the Yorktown Police Department, reviewed a police report prepared by the Yorktown Police Department as well as surveillance footage from a Chain Donut Company Store located in Mohegan Lake, New York ("Store-7"). From these sources, I know that:

a. On or about January 3, 2020, at approximately 2:58 a.m., two individuals wearing black clothing, with masks and gloves, broke into Store-7.

b. The heavy-set individual went to Store-7's office, took a corded, reciprocating saw out of his backpack, cut into the safe, and stole the money inside. Meanwhile, the second individual used a crowbar to open the cash registers and stole the money inside. In total, approximately $1,205 was stolen.

43. Based on my review of a photograph of the piece of paper that JOYCE had in his pocket during the December 1, 2019 Burglary, I know that one of the addresses listed was the address of Store-7.

13

44. Based on my conversation with a police officer from the Pleasantville Police Department, and my review of a police report prepared by the Pleasantville Police Department and the surveillance footage from a Chain Donut Company store located in Pleasantville, New York ("Store-8"), I know that:

   c. At or about 1:44 a.m. on January 3, 2020, two individuals wearing similar clothing and with similar builds to the individuals observed burglarizing Store-7 were observed burglarizing Store-8. The heavy-set individual stole the money from Store-8's safe, while the other individual used a pry bar to open the cash registers and took the money inside. In total, approximately $1,230.89 was stolen.

   d. Based on my review of the surveillance footage from Store-8 and the December 1, 2019 Burglary, I believe that based on his physique and distinctive gait, the heavy-set male is ARTHUR REYNOLDS, the defendant.

   e. Based on my review of the surveillance footage from Store-8 and the December 1, 2019 Burglary, as well as on my review of a photograph of the rap sheet of DION JOYCE, the defendant, I believe that based on his physique and gait, the thinner individual is JOYCE.

45. Based on my review of surveillance footage from a store located down the street from Store-8, I know that a silver Ford Flex was observed in the vicinity of Store-8 around the time that Store-8 was burglarized. Based on my review of records from Enterprise, I know that on or about December 16, 2019, CC-1 rented a silver Ford Flex, with license plate ending in 9343 (the "Ford Flex"), which was not returned to Enterprise until after January 9, 2020.

46. On or about January 9, 2020, law enforcement seized the Ford Flex and on or about February 13, 2020 NYSP obtained a warrant, signed by the Honorable Edward McLoughlin of the Dutchess Supreme and County Court, authorizing the search of the Ford Flex's infotainment system, which among other things, allows users to navigate to identified locations. Based on my conversation with a NYSP detective, I know that the Ford Flex's infotainment center was searched pursuant to the February 13, 2020 warrant. Based on my review of information from the infotainment system in the Ford Flex, I know that:

   a. On or about January 2, 2020 at 10:23 p.m. and on or about January 3, 2020 at 1:45 a.m., 2:01 a.m. and 2:26

a.m. someone searched for directions to an address very close to Store-7.

      b. On or about January 3, 2020 at 1:05 a.m. someone searched for directions to an address next door to Store-8.

    47. Based on my review of records from license plate readers, I know that at or about 4:45 a.m. on January 3, 2020, the Ford Flex was in the vicinity of Greenburgh, New York and at approximately 5:31 a.m., the Ford Flex was identified by a mobile license plate reader on a Bloomfield New Jersey Police Department vehicle.

    48. Based on information from T-Mobile and an agent from the FBI's CAST group, I know that from on or about January 2, 2020 to January 3, 2020, CC-2's Phone traveled from the vicinity of Newark, New Jersey to New York State, was in the vicinity of Store-7 and Store-8 around the time of the above-described burglaries, and thereafter traveled back to Newark, New Jersey.

**G. January 6, 2020 Burglaries**

    49. I have spoken with a police officer from the NYSP and reviewed a police report prepared by the NYSP as well as surveillance footage from a nail salon located in Lagrangeville, New York ("Store-9") and a nail salon in Lagrangeville, New York ("Store-10"). From these sources, I know the following:

      a. At or about 3:30 a.m. on January 6, 2020, two individuals broke into the back entrance of Store-9. The heavy-set individual wore gloves, a hoodie, a face covering, and carried a backpack and a crow/pry bar. The individuals thereafter pried open the cash register, took the approximately $257 inside, and exited.

      b. At or about 6:00 a.m., two individuals wearing similar clothing and with similar builds to the individuals who burglarized Store-9, used a pry bar to break into Store-10. Once inside Store-10, the heavy-set individual knocked over the ATM and used a corded saw to cut it open and took the money inside. Meanwhile, the other individual pried open the cash register and removed its contents. Altogether, the individuals stole approximately $1,000.

50.     Based on my review of the above-described surveillance footage from Store-9, Store-10, and the December 1, 2019 Burglary, I believe that based on his physique and distinctive gait, the heavy-set male is ARTHUR REYNOLDS, the defendant.

51.     Based on my review of surveillance video footage from the vicinity of Store-10, I know that from at or about 5:54 a.m. to 6:20 a.m. on January 6, 2020, a light-colored Ford Flex was observed in the vicinity, driving around, making u-turns and parking on the side of the road with its lights off.

52.     Based on my review of a New York State Incident Report prepared by the NYSP, I know that:

   a.   On or about January 6, 2020, the owner of a café in Pleasant Valley, New York, ("Store-11") notified law enforcement that Store-11 had been burglarized sometime between at or about 1:00 p.m. on January 4, 2020, when Store-11 was closed and locked, and at or about 11:15 a.m. on January 6, 2020, when the owner arrived to open the store.

   b.   Law enforcement observed that the cash register appeared to have been opened with a pry bar. The perpetrators of the burglary obtained approximately $392.80 from the cash register, and further stole several bills of U.S. currency that were taped on Store-11's wall and had signatures and "good luck" written in pen. A total of approximately $430.80 was taken from Store-11.

53.     As described below, on or about January 9, 2020, law enforcement searched the Ford Flex and found numerous bills with signatures and "good luck" written in pen, which the owner of Store-11 was able to identify as the currency that had been stolen from Store-11.

54.     Based on information from T-Mobile and an agent from the FBI's CAST group, I know that from on or about January 5, 2020 to January 6, 2020, CC-2's Phone traveled from the vicinity of Atlantic City, New Jersey to New York State and was in the vicinity of a few miles north of Store-9 about an hour and a half before Store-9 was burglarized and was in the vicinity of Store-10 around 40 minutes after Store-10 was burglarized, and thereafter traveled back to Newark, New Jersey.

**H. January 8, 2020 Burglary**

55.  I have spoken with a police officer from the Putnam County Sheriff's Department, reviewed a police report from the Putnam County Sheriff's Department, and surveillance footage from a Chain Donut Company store located in the Town of Southeast, New York ("Store-12").  From these sources, I know that:

a.  At or about 2:20 a.m. on January 8, 2020, two individuals wearing dark clothing and black masks and gloves, with the heavy-set individual also wearing a black backpack, broke into Store-12.  The heavy-set individual went to the back office and used a reciprocating saw and crowbar to attempt to break into the safe, but was unsuccessful.  The thinner individual used a crowbar to open the cash registers and stole approximately $450.

b.  Based on my review of the surveillance footage from Store-12 and the December 1, 2019 Burglary, I believe that based on his physique and distinctive gait, the heavy-set male is REYNOLDS.

56.  Based on information from T-Mobile and an agent from the FBI's CAST group, I know that from on or about January 7, 2020 to January 8, 2020, CC-3's Phone-2 traveled from the vicinity of Brick Township, New Jersey to New York State and was in the vicinity of Store-12 around the time that Store-12 was burglarized, and thereafter traveled to the vicinity of Atlantic City, New Jersey.

**I. January 9, 2020 – Ford Flex Search**

57.  Based on my conversation with the Probation Officer, I know that:

a.  On or about January 9, 2020, ARTHUR REYNOLDS, the defendant, was instructed to meet with his Probation Officer in New York, New York.  REYNOLDS and CC-1 came to REYNOLDS'S meeting with the Probation Officer in the Ford Flex.

b.  The Probation Officer obtained CC-1's consent to search the Ford Flex and during that search found a backpack containing a pry bar, screwdriver, extension cord, saw blades and pliers.  As described above, law enforcement found similar tools in the backpack REYNOLDS used during the December 1, 2019 Burglary.  In addition, based on my review of the backpack and the surveillance footage from the above-described burglaries, the backpack had the same reflective patches seen on

17

the backpack used in connection with the burglaries on or about December 16, 2019, January 3, 2020, January 6, 2020, and January 8, 2020.

WHEREFORE, the deponent respectfully requests that a warrant issue for the arrest of ARTHUR REYNOLDS and DION JOYCE, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

/s/ Steven Berry (credentials inspected # 28197)<br>
STEVEN BERRY<br>
Special Agent<br>
Federal Bureau of Investigation

Sworn to before me by reliable electronic means in accordance with Federal Rule of Criminal Procedure 4.1  (via FaceTime)

Date: 1/26/21

_____
THE HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York